Tasha SCOTT, Plaintiff,

v.

**SOLANO COUNTY HEALTH AND SOCIAL SERVICES DEPARTMENT, Solano County, Patrick Duterte and Trish Edie, et al, Defendants.**

No. CIV. 06–1216 LKK/EFB.

United States District Court, E.D. California.

Sept. 5, 2006.

---

Marylon M. Boyd, Law Office of Marylon Boyd, Oakland, CA, for Plaintiff.

Cori Rae Sarno, Angelo, Kilday & Kilduff, Sacramento, CA, for Defendants.

## ORDER

KARLTON, Senior District Judge.

Plaintiff, Tasha Scott ("Scott"), files suit against defendants Solano County, Solano County Health & Social Services Department ("CHSS"), Patrick Duterte (Director of Solano CHSS)[1], and Trish Edie (plaintiff's supervisor), alleging the following claims against all defendants: 1) "Racial and Color Discrimination" (Government Code § 12940, Title VII, and 42 U.S.C. § 1983); 2) Harassment/Hostile Work Environment (Government Code § 12940, Title VII); 3) Retaliation (Government Code § 12940); 4) Violation of the Covenant of Good Faith and Fair Dealing; 5) Intentional Infliction of Emotional Distress; 6) Negligent Infliction of Emotional Distress; 7) Employment Practices Discipline in Violation of Public Policy; 8) Violation of Article 1, Section 7 of the California Constitution; 9) Violation of Article 1, Section 8 of the California Constitution; 10) Violation of Government Code § 12948; 11) Wrongful Termination in Violation of Public Policy; 12) Wrongful Termination; 13) Negligent Hiring, Supervising and/or Training; 14) Defamation.

Defendants move to dismiss all claims, except for claim five (Intentional Infliction of Emotional Distress). I decide the matter based on the pleadings, the parties' papers and after oral argument.[2]

---

1. Plaintiff only refers to Duterte as "Director" in her complaint. Compl. at 2:18. The court assumes that plaintiff Duterte was the Director of CHSS.

2. Defendants make no claims concerning the § 1983 action. Accordingly, it should not be dismissed. The claim, however, assuming it is actually made, is intertwined with other causes of action and must therefore be dismissed as badly pled.

## I.

### *ALLEGATIONS OF THE COMPLAINT*

Plaintiff, Tasha Scott, is an African–American woman who was employed by defendant, CHSS, as an Employment Resource Specialist from July 9, 2002 until her termination on October 14, 2004. Compl. at 1–2. Plaintiff alleges that she applied for supervisory positions on or about January 2004 and May 2004, but that less qualified Caucasian individuals were hired for such positions. *Id.* at 2. She contends that when she complained of race discrimination because "she was more qualified than the person's [sic] hired," she "became a target of retaliation." *Id.*

Plaintiff maintains that during the course of her employment she objected to violating the rights of her clients by "rushing clients into signing documents stating they read and understood their rights and responsibilities" when many of them could not read or did not understand what they were signing. Compl. at 2. Scott allegedly expressed concern to "lead worker" Dave Madden, who then communicated plaintiff's concerns on or about August 2004 to Trish Edie ("Edie"), plaintiff's supervisor. Plaintiff claims that because of her complaints about rushing clients into signing documents they did not understand, she was "singled out" and "required to go through mandatory new employee training even though she had already been employed more than two years and had exemplary performance." *Id.*

On September 22, 2004, plaintiff alleges that without any warning or notice, she was removed from her position and "false charges were levied against her," accusing her of "dishonesty and violation of company rules." Compl. at 2. On October 14, 2004, Scott's union representative advised Director, Patrick Duterte, and Human Resource [sic] Manager, Wayne Page, that there was no evidence that plaintiff "exhibited any dishonesty or lack of integrity or violated any policies." *Id.* Nevertheless, Scott was terminated by defendant on October 14, 2004. *Id.*

On December 16, 2005, plaintiff filed the instant suit in Alameda County Superior Court. Plaintiff seeks general, compensatory, special, and punitive damages, front pay and back pay, and attorney's fees. Compl. at 16. On June 5, 2006, defendants removed the action from Alameda County Superior Court to this Court pursuant to 28 U.S.C. § 1441.[3]

## II.

### *DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)*

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL CIO v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id.; see also Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). So construed, the

---

**3.** Defendants explain that their notice of removal was filed within thirty days of their receipt of the summons and complaint. Notice of Removal at 2.

court may not dismiss the complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the. laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

## III.

### *ANALYSIS*

Defendants move to dismiss all but one of plaintiff's fourteen causes of action.

4. The court is compelled to note that it has spent an unreasonable amount of time adjudicating this matter because of plaintiff's counsel's conduct. Although the court has sanctioned plaintiff's counsel $300 for twice failing to file an opposition brief, and generously provided plaintiff's counsel with a third opportunity to file the brief, the opposition brief which was filed on August 11, 2006 fails to adequately respond to defendants' arguments. Of the ten pages submitted by plaintiff, a recitation of the facts makes up six of those pages, and the standards make up another page. In sum, it appears plaintiff's counsel has filed only three pages of argument that attempt to respond to defendants' motion. Unfortunately, these three pages fail to apprise the court of the relevant cases and issues. Plaintiff's counsel is admonished that her future failure to respond to the court's orders and to adequately represent her client will result in severe sanctions, dismissal of the instant matter, and/or referral to the California State Bar.

5. Title VII of the Civil Rights of 1964 Act is codified as Subchapter VI of Chapter 21 of

The court turns to each cause of action and explains why defendants' motion must be GRANTED in part, and DENIED in part.[4]

## A. TITLE VII AND FEHA CLAIMS (CLAIMS 1,2,3)

Plaintiff's first claim for relief alleges "Racial and Color discrimination" pursuant to Title VII,[5] the California Fair Employment and Housing Act ("FEHA")[6], and 42 U.S.C. § 1983.[7] Plaintiff's second claim alleges "Harassment/Hostile work environment" under Title VII and FEHA, while her third claim alleges "Retaliation" under FEHA.[8]

Individual defendants Patrick Duterte, Director of CHSS, and Trish Edie, plaintiff's supervisor, move to dismiss the Title VII and FEHA claims asserted against them, arguing that supervisors and other individual employees are not an "employer" as defined under Title VII and FEHA, and thus cannot be held personally liable.

Title 42 of the United States Code, 42 U.S.C. § 2000e et *seq.* Title VII outlaws discrimination in employment in any business on the basis of race, color, religion, sex or national origin (see 42 U.S.C. § 2000e–2). Title VII also prohibits retaliation against employees who oppose such unlawful discrimination.

6. FEHA, which is codified at § 12900 et *seq.* of the Government Code, is a state antidiscrimination statute that confers on employees a right against dismissal on certain grounds and creates a remedy for its violation.

7. To establish a violation of 42 U.S.C. § 1983, plaintiff must prove that defendants acted under color of state law, and deprived Plaintiff of her constitutional rights. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

8. Plaintiff's allegations in claims one through three are lodged at all defendants. Compl. at 4–7.

Mot. at 4. Defendants maintain that only the county may properly be considered plaintiff's employer.

Defendants are only partially correct. Under Title VII, there is no personal liability for employees. FEHA, however, allows liability to attach to individual employees for harassment and retaliation.

### a. Title VII

■ Under Title VII, there is no personal liability for employees, including supervisors. *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587–88 (9th Cir. 1993)665, *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994)("This circuit ... protect[s] supervising employees from liability in their individual capacities").[9] The Ninth Circuit has also made clear that as to liability under Title VII, "[t]here is no reason to stretch the liability of individual employees beyond the respondeat superior principle intended by Congress."[10] *Id.* at 588. See also *Padway v. Palches,* 665 F.2d 965, 968 (9th Cir.1982)("[I]ndividual defendants cannot be held for back pay."). This court is bound by *Miller* and *Padway* and must dismiss the Title VII claims contained in causes of action one and two against defendants Duterte and Edie. *Miller,* 991 F.2d at 588.

### b. FEHA

The court must dismiss the FEHA allegations against Edie and Duterte contained in claim one (discrimination), but sustain the FEHA claims against these individuals as to claims two and three (harassment and retaliation, respectively).

### i. Discrimination Claim

In *Reno v. Baird,* 18 Cal.4th 640, 663, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (1998), the California Supreme Court held that supervisors could not be held liable under FEHA's general anti-discrimination provision. The court articulated that it was concerned that "imposing liability on individual supervisory employees would do little to enhance the ability of victims of discrimination to recover monetary damages, while it can reasonably be expected to severely impair the existence of supervisory judgment." *Id.* at 651–52, 76 Cal. Rptr.2d 499, 957 P.2d 1333.

According to the court this concern was embodied in FEHA's statutory language and its varying approaches to harassment and discrimination claims. FEHA prohibits "an employer ... or any other person" from harassing an employee, Cal. Gov. § 12940(j)(1), but prohibits only "an employer" from engaging in improper discrimination. *Id.* at § 12940(a). The court explained that "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives ... discrimination claims, by contrast, arise out of the performance of necessary personnel management duties." *Reno,* 18 Cal.4th at 645–46, 76 Cal.Rptr.2d 499, 957 P.2d 1333 (quotation omitted). To avoid creating supervisory conflicts of interest and a chilling of effective management, the court concluded that the Legislature did not intend to hold supervisors

9. In *Miller,* the Ninth Circuit held that a CEO and two general managers of a restaurant were not individually liable under Title VII. 991 F.2d at 587.

10. The Ninth Circuit explained that based on the statutory scheme of Title VII, "it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Miller,* 991 F.2d at 588. The court reiterated that its ruling in *Padway* "that individual defendants cannot be held liable for damages under Title VII is good law ..." *Id.* at 587.

liable for unlawful discrimination. *Id.* at 654, 76 Cal.Rptr.2d 499, 957 P.2d 1333.

In her first claim, plaintiff avers that "[d]efendants and each of them engaged in conduct or carried out affirmative policy or condoned unlawful conduct" pursuant to FEHA. Specifically, she contends that her "race was the motivating factor" in defendants' decision to prevent her from being promoted, advancing, and in their decision to terminate her. Compl. at 4–5. Based on the unambiguous language in *Reno,* the court must dismiss plaintiff's FEHA discrimination claims against Duterte and Edie.

### ii. Harassment Claim

In her second claim, plaintiff alleges that defendants, including Duterte and Edie, "by their acts and/or omissions," failed to "end the harassment and hostile work environment." Compl. at 6. Although the court in *Reno* alluded to it, it did not hold that employees could not be liable for harassment. In 2001, however, the California Legislature amended FEHA's harassment provision expressly holding individual employees liable for their harassment. *See Cal. Gov.Code* § 12940(j)(3); *Page v. Superior Court,* 31 Cal.App.4th 1206, 37 Cal.Rptr.2d 529 (1995)("As to supervisors ... the language of FEHA is unambiguous in imposing personal liability for harassment or retaliation in violation of FEHA."); *Winarto v. Toshiba America Electronics Components, Inc.,* 274 F.3d 1276, 1288 (9th Cir.2001)(citing *Page*). Thus, although individual defendants move for dismissal as to all FEHA claims, that motion must be DENIED as to the harassment claim contained in the second cause of action.

### iii. Retaliation Claim

■ In her third claim, plaintiff alleges, *inter alia,* that she has been "retaliated against by defendants as a result of having made complaints of discrimination, harassment, and retaliation." Defendants contend that all FEHA claims against Duterte and Edie must be dismissed, citing *Reno.* I cannot agree. The *Reno* court focused on FEHA's antidiscrimination provision, which prohibits only an "employer" from discriminating in hiring and employment decisions. Cal Gov't Code § 12940(a). Although it does not appear that the California Supreme Court has directly addressed this issue, the Ninth Circuit has held that "an individual-supervisor may be held personally liable for retaliation under FEHA." *Winarto v. Toshiba Am. Elec.,* 274 F.3d 1276, 1288 (9th Cir.2001)(citing *Fisher v. San Pedro Peninsula Hosp.,* 214 Cal. App.3d 590, 262 Cal.Rptr. 842 (1989) and *Page,* 31 Cal.App.4th 1206, 37 Cal.Rptr.2d 529, *supra* ). The court explained that the retaliation provision of FEHA applies to "any employer labor organization, employment agency, or *person.*" Cal. Gov't Code § 12940(h) (emphasis in original). *Id.* Giving "person" its ordinary meaning, supervisors and individual employees can be held for retaliation under § 12940(h). *Id.* Accordingly, Duterte's and Edies' motion to dismiss the FEHA retaliation claims against them contained in plaintiffs' third cause of action must be DENIED.

### B. VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (Claim 4)

■ Defendants contend that under California law, the terms and conditions of public employment are controlled by statute rather than contract. Mot. at 5. They argue that plaintiff may not state a cause of action for breach of the implied covenant of good faith and fair dealing because "where there is no underlying contract, there can be no duty arising from the implied contract" (citation omitted). *Id.*

Having examined the relevant authority, the court concludes that defendants are correct.

■ Every contract contains an implied covenant of good faith and fair dealing that "neither party will do anything that injures the right of the other to receive the benefit of [their] bargain." *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658 (1958). The covenant of good faith and fair dealing arises out of the contract itself and protects the express contractual promises of the contract, rather than to protect a general public policy interest not directly tied to the contract's purposes. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is prerequisite for any action for breach of the covenant. *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49, 275 Cal.Rptr. 17 (1990).

■ Notably, plaintiff has not brought a breach of contract claim. She has also not alleged—nor could she—that her employment is governed by contract. In California, public employment is held not by contract, but by statute. *Miller v. State of California*, 18 Cal.3d 808, 813, 135 Cal. Rptr. 386, 557 P.2d 970 (1977). Relying on *Miller*, the California Supreme Court has made clear that civil service employees cannot state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing. *Shoemaker v. Myers*, 52 Cal.3d 1, 23–24, 276 Cal.Rptr. 303, 801 P.2d 1054 (1990). This same general principle of law applies to civil service

and noncivil service public employees alike. *Hill v. City of Long Beach*, 33 Cal.App.4th 1684, 1690, 40 Cal.Rptr.2d 125 (1995). Plaintiff pleads that defendant CHHS and the County are "public entities and municipalities." Compl. at 3. She further avers that she is employed by defendant as an "Employment Resource Specialist." Given that plaintiff was a public employee whose terms of employment is governed by statute, she cannot state a cause of action for breach of the implied covenant of good faith and fair dealing. *Shoemaker, supra.* Defendants' motion to dismiss plaintiff's fourth cause of action must be GRANTED.

## C. DISCIPLINE AND WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (CLAIMS 7, 11, 12)

■ The elements of a claim for wrongful discharge in violation of public policy are: 1) an employer-employee relationship, 2) termination or other adverse employment action, 3) the termination of the plaintiff's employment was in violation of public policy, 4) the termination was a legal cause of the plaintiff's damages, and 5) the nature and extent of plaintiff's damage. *Holmes v. General Dynamics Corp.*, 17 Cal.App.4th. 1418, 1426, 22 Cal.Rptr.2d 172 (1993). Defendants contend that plaintiff's seventh ("Employment Practices–Discipline in Violation of Public Policy"), eleventh ("Wrongful Termination in violation in violation of public policy"), and twelfth ("Wrongful Termination") claims must be dismissed for various reasons. The court addresses their contentions below.[11]

11. Plaintiff brings a wrongful discipline claim in the seventh cause of action. The tort of wrongful discipline in violation of public policy has been recognized by California courts. *See, e.g., Garcia v. Rockwell Internat. Corp.*, 187 Cal.App.3d 1556, 1561–1562, 232 Cal. Rptr. 490 (1986). The claim is similar to a wrongful discharge claim. A plaintiff's claim that the defendant's wrongful discipline claim violated public policy must allege the policy is: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense

First, defendants argue plaintiff's twelfth claim, "wrongful termination," wherein plaintiff claims she was "terminated in violation of the County's and Department's representation and promise 'that she would only be terminated for cause and benefit of progressive discipline' "[sic], does not refer to any public policy. In order to prevail on a wrongful termination claim under California law, a plaintiff must plead and prove as one element of that claim that a fundamental public policy exists that is "delineated in constitutional or statutory provisions ..." *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680 (1992). In her twelfth claim, plaintiff "realleges and incorporates paragraphs 1 through 62 of the complaint," and those paragraphs include allegations that defendants have violated various statutes and constitutional provisions, including Title VII, FEHA, Art. I, §§ 7–8 of the California Constitution. Defendants' motion to dismiss the twelfth claim on this account must be denied.

Secondly, defendants argue that claims seven, eleven, and twelve must be dismissed because they are immune under Cal. Gov't Code § 815. Section 815 states that "[e]xcept as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other

person."[12] Defendants assert that plaintiff's constructive discharge and discipline claims in violation of public policy are common law claims that come within the purview of § 815. Defendants' argument is unavailing.

The court notes that all three claims make mention that defendants have violated FEHA, and it is well-established that FEHA applies to public entities. *State Personnel Bd. v. Fair Employment & Housing Com.*, 39 Cal.3d 422, 217 Cal. Rptr. 16, 703 P.2d 354 (1985). The California Supreme Court has allowed wrongful discharge claims to be brought against public entities, particularly where FEHA violations have been alleged. In *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1148, 77 Cal.Rptr.2d 445, 959 P.2d 752 (1998), the California Supreme Court recognized that both FEHA and common law wrongful discharge remedies were available to a city employee who suffered discrimination based on work-related disability. The wrongful discharge claim was not barred by § 815(a) or any other statutory immunity potentially available to the city. In addition, although defendant cites to *Palmer v. Regents of Univ. of California*, 107 Cal.App.4th 899, 909, 132 Cal. Rptr.2d 567 (2003), for the proposition that a wrongful discharge claim cannot be asserted against a public employer, this case is inapposite to the instant matter.[13]

---

that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge [or discipline]; and (4) substantial and fundamental." *Stevenson v. Superior Court*, 16 Cal.4th 880, 894, 66 Cal.Rptr.2d 888, 941 P.2d 1157 (1997).

**12.** Tort liability of public entities in California is governed by the Tort Claims Act, CA Gov't Code §§ 815(a), *et seq.*

**13.** The court in *Palmer* specifically stated that it would not address whether § 815(a) bars a wrongful discharge claim. *Id.* at 910, 132

Cal.Rptr.2d 567 ("Because this court previously concluded Palmer had stated a common law cause of action for wrongful discharge in violation of public policy, we do not hold the Regents are immune from her Tameny action under section 815"). Furthermore, even a cursory examination of *Palmer* reveals that the court dismissed the wrongful termination claim because plaintiff failed to exhaust internal grievance procedures, not because of any statutory immunity provided under § 815(a). *Id.* at 903, 132 Cal.Rptr.2d 567.

Finally, defendants argue that these three claims must be dismissed against individual defendants Duterte and Edie because "only an employer can be liable for the tort of wrongful discharge." Mot. at 6. Defendants cite to *Khajavi v. Feather River Anesthesia Med. Group*, 84 Cal. App.4th 32, 38–39, 100 Cal.Rptr.2d 627 (2000). *Khajavi* provides no support for defendants' assertion.[14]

For the reasons set forth above, the court DENIES defendants' motion to dismiss as to claims seven, eleven, and twelve.[15]

## D. VIOLATION OF ARTICLE I, §§ 7 AND 8 OF THE CALIFORNIA CONSTITUTION (CLAIMS 8, 9)

Defendants move to dismiss plaintiffs' claims for relief under Art. §§ 7, 8 of the California Constitution. After reviewing the relevant case law, the court GRANTS the motion as to § 7, but DENIES the motion as to § 8.

**14.** There, a California appellate court dismissed a *wrongful discharge claim against* defendant because plaintiff was never employed by defendant and had no employment relationship whatsoever with defendant. *Id.* at 53, 132 Cal.Rptr.2d 567 ("Robert Del Pero had no employment relationship with Khajavi"). The court never addressed whether individual supervisors of an employer may be liable for wrongful discharge claims. Defendants fail to direct the court to any authority which supports its argument that a wrongful discharge claim cannot be asserted against individual employees or supervisors.

**15.** Defendants do not claim that plaintiff failed to exhaust an established remedy. Thus, this is not a ground to dismiss. On the other hand, it is difficult for the court to understand why a separate cause of action is premised on FEHA, and why a separate tort gains anything for plaintiff. Of course it is up to the parties to sort through such questions.

**16.** Section 7(a) states, in pertinent part:

### a. Art. I, § 7 of the California Constitution (Eighth Claim)

Plaintiff asserts in her eighth claim that the "intentional failure to remedy unequal treatment violates plaintiff's rights to equal protection of the laws guaranteed by Art. I, Section 7.[16]" Compl. at 11–12. Defendants contend that plaintiff may not sue for damages based upon this Constitutional violation. Their argument is well-taken. In *Katzberg v. Regents of Univ. of California*, 29 Cal.4th 300, 127 Cal.Rptr.2d 482, 58 P.3d 339(2002), the California Supreme Court barred plaintiff from seeking damages for any violation of his state constitutional right to due process under § 7(a). The court stated that "there is no indication in the language of Article I, section 7(a), nor any evidence in the history of that section, from which we may find, within that provision, and implied right to seek damages ..." *Id.* at 325, 127 Cal.Rptr.2d 482, 58 P.3d 339. The court also found "no basis upon which to recognize a constitutional tort action for such damages" under Section 7(a). *Id.* at 329,

A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation.

Although plaintiff does not make clear whether she brings her claim under § 7(a) or § 7(b), it does not appear that § 7(b) would apply given plaintiffs' pleadings of "unequal treatment." Section 7(b) states that "[a] citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens." Plaintiff makes no mention of any privilege or immunity, only that she was treated unfairly, which appears to fall within the purview of the "liberty," "due process," and "equal protection" rights guaranteed under § 7(a).

127 Cal.Rptr.2d 482, 58 P.3d 339. It is clear from plaintiff's complaint that she seeks only monetary damages in this suit (special damages, general and compensatory damages, prejudgment interest, punitive damages, back pay and front pay; reasonable attorneys' fees). Because the court may not grant the relief plaintiff seeks as to this claim, it must be DISMISSED.

### b. Art. I, § 8 of the California Constitution (Ninth Claim)

Article I, section 8 of the California Constitution states: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." Defendant argues that this claim must be dismissed because, like Art. I, § 7, this claim "does not create a separate cause of action for damages." Mot. at 7. Again, plaintiff fails to respond to this argument in her opposition brief. Defendants' motion to dismiss must be DENIED as to this claim, however, because they cite no relevant authority for their argument that damages are not allowed under § 8.

■■■ Defendants cite to *Himaka v. Buddhist Churches of America*, 919 F.Supp. 332, 334–35 (N.D.Cal.1995)(Jensen, J.). Nowhere in its opinion did the district court conclude that monetary damages are not allowed under Section 8. Further, it appears to the court that *Himaka* actually undermines defendants' argument. The district court in *Himaka* stated that there may not be a "direct cause of action arising under Section 8," and that it must be "asserted through a state tort law mechanism," such as wrongful termination in violation of public policy. *Id.* at 335. Plaintiff has done just that. She has incorporated paragraphs 1 through 50 in her ninth claim, which includes claims for wrongful termination in violation of public policy. Thus, according to *Himaka*, plaintiff has indeed asserted her § 8 claim through a state tort law mechanism in order to bring a private cause of action. *See Phillips v. Saint Mary's Regional Med. Center*, 96 Cal.App.4th 218, 116 Cal. Rptr.2d 770 (2002) (Art. I, Sec. 8 is an alternative source of public policy for wrongful termination in violation of public policy claims). Defendants' arguments must be rejected and their motion to dismiss must be DENIED as to this claim.

### E. CALIFORNIA GOVERNMENT CODE § 12948 (Tenth Claim)

Plaintiff's tenth claim for relief asserts a violation of California Government Code § 12948. That section provides that it "is an unlawful practice ... for a person to deny or to aid, incite, or conspire in the denial of the rights created by Section 51, 51.5, 51.7, 54, 54.1, or 54.2 of the Civil Code." Again, defendants raise a number of arguments that are unavailing.

■■■ Defendants contend that this section prohibits discrimination only by employers, and not individuals, and so the § 12948 claim must be dismissed as to Edie and Duterte. I cannot agree. Defendants cite to *Reno, supra* 18 Cal.4th at 644, 76 Cal.Rptr.2d 499, 957 P.2d 1333, for this proposition, but this case offers no support for their position. *Reno* stands for the proposition that the FEHA anti-discrimination provision, § 12940(a), allows persons to sue and hold liable their employers, but not individuals. *Reno* makes no mention of § 12948, a different FEHA provision.

Defendants make several more arguments that the court must reject. First, defendants direct the court once again to CA Gov't Code § 815(a), implying that this provision bars plaintiff's § 12948 claim because it is being brought against public

entities. Specifically, defendants maintain that this provision does not "abrogate the immunity provided a public entity from liability from the act or omissions of the public entity or a public employee set forth in Government Code § 815(a)." Mot. at 8 (internal quotations omitted). Section 815(a) "eliminates *common law* governmental liability," *Levine v. City of Los Angeles*, 68 Cal.App.3d 481, 137 Cal.Rptr. 512 (1977) (emphasis noted). Because a claim brought under Gov't Code § 12948 is brought under a California statute, and not the common law, § 815(a) has no application here. Defendants also assert that § 12948 is not cognizable against individual public employees, but provide no authority whatsoever for this argument. Mot. at 8. Given that the statute speaks of "a person," it would appear by its terms to apply to the individual defendants.

For the reasons set forth above, defendants' motion to dismiss § 12948 must be DENIED.

## F. NEGLIGENT HIRING, SUPERVISION, TRAINING & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (CLAIMS 6, 13)

■ Defendants move to dismiss both negligence claims brought by plaintiff in this suit. They argue that "[n]egligence by an employer is expressly covered under the exclusively provisions of the California Worker's Compensation statutes." Mot. at 9. This argument cannot lie. The workers' compensation law does not bar claims based on same acts or allegations of a negligent response to harassment or discrimination claims because these claims are based on accusations of discrimination, which "is not a normal risk of the compensation bargain." *Fretland v. County of Humboldt*, 69 Cal.App.4th 1478, 1492, 82 Cal.Rptr.2d 359 (1999); *See Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th

Cir.1994)("Personal injury claims that implicate fundamental public policy considerations are not preempted by the Workers' Compensation Act"). Here, plaintiff's two negligence claims are premised upon allegations of discriminatory conduct. Compl. at 10 and 14. Therefore, plaintiff's sixth and thirteenth causes of action for negligence are still at issue as to the entity defendants regardless of the applicability of any exceptions to the workers' compensation exclusivity provisions. *See Fretland, supra* (holding that the workers' compensation exclusivity provisions do not bar emotional distress claims founded on discrimination).

Defendants additionally contend that the all defendants are immune from these negligence claims under § 815.2(b) of the California Tort Claims Act. Mot. at 10. I cannot agree. Section 815.2(b) merely states that where a public entity's tort liability is derivative of employee liability, that public entity is also liable. Defendants argue that an employee or former employee "cannot sue individual employees based on their conduct, including acts or words relating to personnel actions," citing *Sheppard v. Freeman*, 67 Cal.App.4th 339, 347, 79 Cal.Rptr.2d 13 (1998), and thus, because the individual employees cannot be liable, the County and CHHS cannot be liable. As I have previously explained, in resolving questions of California law, this court "is bound by the pronouncement of the California Supreme Court and the opinions of the California Courts of Appeal are merely data for determining how the highest California court would rule ... in the absence of other evidence, the opinions of California courts of appeal on questions of California law cannot simply be ignored." *Brewster v. County of Shasta*, 112 F.Supp.2d 1185, 1188 n. 5 (E.D.Cal.2000)(Karlton, J.) (citations omitted).

In the instant case other evidence exists. A district court has already rejected *Sheppard* as overly broad. *See Graw v. L.A. County Metro. Transp. Auth.*, 52 F.Supp.2d 1152 (C.D.Cal.1999)(Pregerson, J.). Moreover, *Sheppard* itself contains "other evidence"—namely, the dissenting opinion of presiding Justice Kremer. I conclude that other evidence justifies an independent examination of the issue.

Upon individual examination, the court finds Judge Pregerson's opinion more persuasive and thus I must reject *Sheppard*. Nonetheless, questions exist. It appears to the court that plaintiff's claims must be dismissed. Plaintiff alleges negligence on the part of these defendants resulting in discrimination. The allegation is a non sequitur. Discrimination is an intentional act and not the result of negligence.

■■■■ Plaintiff brings negligence and discrimination claims against all defendants, including Edie and Duterte, but her poorly pled complaint fails to analyze the various claims as to the each defendant. See Compl. at 4–5, 9–10, 14–15. An employer may be liable for both negligence and intentional discrimination committed by an employee within the scope of his or her employment under vicarious liability principles. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756, 118 S.Ct. 2257, 141 L.Ed.2d 633(1998)("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment"); *New Orleans, M., & C.R. Co. v. Hanning*, 82 U.S. 649, 15 Wall. 649, 657, 21 L.Ed. 220, (1873) ("The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of"); *Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963, 967 (7th Cir.1986) (" 'respondeat superior' . . . is a doctrine about employers . . . and other principals"); Restatement (Second) of Agency § 219(1) (1957).[17] Thus, plaintiff may allege both negligence and intentional discrimination against the county and CHSS.

■■■■ Plaintiffs' allegations that individual defendants committed both negligence and intentional discriminatory acts in this case, however, cannot lie. In the employment context, a claim for negligence requires the existence of a legal duty of care by an employer to an employee, a breach of that claim, proximate causation of plaintiff's damages, and damages. *Federico v. Superior Court*, 59 Cal.App.4th 1207, 1214 (1997). A negligence claim thus rests on the breaching of a duty where the defendant knows or should know of facts which would warn of wrongdoing, and fails to do so. If plaintiff alleges that Edie and Duterte had such a duty and that they breached that duty to warn of wrongdoing, they also cannot allege that these two defendants committed the wrongdoing which, in this case, are the discriminatory acts. It simply makes no logical or factual sense.

Defendants' motion to dismiss the sixth and thirteenth causes of action must GRANTED as to Edie and Duterte.

## G. DEFAMATION (Claim 14)

■■■■ Defendants argue that plaintiffs have failed to specify the alleged de-

---

**17.** The rule that an employer may be liable for both negligence and intentional discrimination committed by an employee within the scope of his or her employment also applies under California law. *See John Y. v. Chaparral Treatment Center, Inc.*, 101 Cal.App.4th 565, 124 Cal.Rptr.2d 330 (2002), *review denied*, (2002); *Saks v. Charity Mission Baptist Church*, 90 Cal.App.4th 1116, 110 Cal.Rptr.2d 45 (2001), *as modified on denial of reh'g,(Aug. 21, 2001); Depew v. Crocodile Enterprises, Inc.*, 63 Cal.App.4th 480, 73 Cal.Rptr.2d 673 (1998). *Bussard v. Minimed, Inc.*, 105 Cal. App.4th 798, 129 Cal.Rptr.2d 675 (2003). *Yamaguchi v. Harnsmut*, 106 Cal.App.4th 472, 130 Cal.Rptr.2d 706 (2003).

famatory statement at issue, and thus, her fourteenth claim must be dismissed. To state a claim for defamation (either libel or slander), plaintiff must establish "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645, 85 Cal.Rptr.2d 397 (1999); Cal. Civ.Code §§ 45–46. Publication means "communication to a third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Id.* In addition, under California law to state a claim for libel, a plaintiff must plead the alleged libelous words. *Okun v. Super. Ct.*, 29 Cal.3d 442, 458, 175 Cal.Rptr. 157, 629 P.2d 1369(1981).

██ Under California law, the defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1216 (C.D.Cal.2004). Even under the liberal federal pleading standards, "general allegations of the defamatory statements" that do not identify the substance of what was said are insufficient. *See Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F.Supp. 1303, 1314 (N.D.Cal.1997) (holding that "the words constituting a libel or slander must be specifically identified, if not pleaded verbatim").

██ Here, plaintiff alleges that defendants "published false information about plaintiff's performance and falsely accused plaintiff of dishonesty and lack of integrity." Compl. at 15. It is clear that plaintiff complains about statements allegedly made about her performance at work and her character. Although terse, her allegations are sufficient to provide defendants sufficient notice of the issues to enable

preparation of a defense. See *Okun, supra.* The motion to dismiss the defamation claim must be DENIED.

## V.

### CONCLUSION

As consistent with the order, the court GRANTS in part, and DENIES in part defendants' motion to dismiss.

Given the fact that many of the causes of action are not separately stated, the court will dismiss the complaint and grant plaintiff thirty (30) days from the date of this order to file an amended complaint, consistent with this order.[18]

IT IS SO ORDERED.

**18.** Plaintiff's counsel is admonished that the court will not look kindly upon the addition of frivolous claims.